IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RANDY MELTON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. WGC-11-1702 |
| ) | |
| CAROLYN W. COLVIN ) | |
| Acting Commissioner of Social ) | |
| Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Randy Melton ("Mr. Melton" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 2, 5-6.[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 16). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand will be denied and Defendant's Motion for Summary Judgment will be granted.

**1.  Background**

On September 24, 2004 Mr. Melton filed an application for Disability Insurance Benefits ("DIB"). R. at 48-52. In the letter of October 1, 2004 the Social Security Administration

---
[1] The case was subsequently reassigned to the undersigned.

1

notified Mr. Melton that he does not qualify for disability benefits because he has not worked long enough under Social Security. R. at 53-55. Subsequently on February 2, 2005 Mr. Melton filed another application for DIB. R. at 56-60. In the letter of February 7, 2005 the Social Security Administration once again notified Mr. Melton that he does not qualify for disability benefits because he has not worked long enough under Social Security. R. at 61-63. There is no record of Mr. Melton appealing these determinations.

On January 31, 2005 Mr. Melton filed an application for SSI alleging a disability onset date of July 1, 2004 due to a bad back and left hip and left foot. *See* R. at 64-68, 83-92. Mr. Melton's SSI application was denied on June 2, 2005. R. at 29-31. On June 14, 2005 Mr. Melton requested reconsideration, R. at 32, and on October 4, 2005 his application for SSI was denied again. R. at 34-35. Thereafter on October 17, 2005 Mr. Melton requested a hearing before an Administrative Law Judge ("ALJ"). R. at 36-37. On August 8, 2006 an ALJ convened a hearing. Mr. Melton was represented by counsel at the hearing. Mr. Melton amended his date of onset to June 20, 2005 at the hearing. *See* R. at 266-67, 312. The ALJ obtained testimony from Mr. Melton and a vocational expert ("VE"). R. at 260-89. In the November 15, 2006 decision the ALJ found Mr. Melton has not been under a disability as defined in the Social Security Act since the date of his application, January 31, 2005. R. at 24. On November 27, 2006 Mr. Melton requested a review of the hearing decision. R. at 12-13. On November 14, 2007 the Appeals Council denied Mr. Melton's request for review, R. at 4-6, thus making the ALJ's determination the Commissioner's final decision.

On January 11, 2008 Mr. Melton filed a civil action in this court. *See Melton v. Astrue*, JKS-08-CV-92, ECF No. 1. Subsequently, on March 10, 2010, the Commissioner moved for a remand of the case pursuant to the Social Security Act, Sentence Four, of 42 U.S.C. § 405(g),

with the consent of Mr. Melton. *Id.*, ECF No. 38. The following day the court granted the motion, remanding the case to the Commissioner for further administrative proceedings. *Id.*, ECF No. 39.

On July 28, 2010 the Appeals Council remanded the case to the ALJ, stating:

> The U.S. District Court for the District of Maryland (Civil Action Number 8:08-CV-00092-PJM) has remanded this case to the Commissioner of Social Security for further administrative proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act.
>
> The Appeals Council hereby vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for resolution of the following issues:
>
> - The hearing decision, finding # 3, states that the claimant has a severe impairment of residuals of a foot injury. However, the decision does not evaluate the severity and effects of this impairment at step 3 of the sequential evaluation. Moreover, the decision does not discuss any medical evidence as to the nature of this impairment.
>
> - The hearing decision, Tr. 21/4, states that the claimant's statements concerning the intensity, duration, and limiting effects of subject symptoms are not generally credible but does not consider the following factors in evaluating the intensity, persistence and limiting effects of the alleged symptoms: objective medical evidence; daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors and the type, dosage, effectiveness and side effects of medication.
>
> Upon remand, the Administrative Law Judge will:
>
> - Evaluate the claimant's left foot injury.
>
> - Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929) and Social Security Ruling 96-7p.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Ruling 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-12). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

R. at 309-10.

A supplemental hearing was held on October 6, 2010 in accordance with the Appeals Council's Remand. Mr. Melton was again represented by counsel. At the hearing Mr. Melton amended his date of onset to November 10, 2008. *See* R. at 331, 366. The ALJ obtained testimony from Mr. Melton and a VE. R. at 360-86. In the February 25, 2011 decision the ALJ found Mr. Melton has not been under a disability, as defined in the Social Security Act, since November 10, 2008, the amended alleged onset date. R. at 306. In a letter of March 21, 2011 the Social Security Administration acknowledged receiving the March 7, 2011 letter from Mr. Melton's counsel "requesting more time to send us written exceptions explaining the reasons you

disagree with the Administrative Law Judge's decision dated February 25, 2011." R. at 290. Mr. Melton's counsel was granted more time and directed to submit exceptions within 30 days of receiving the letter. Those exceptions were never submitted. "If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand." 20 C.F.R. § 416.1484(d) (2010).

2.     **ALJ's Decision**

In the November 15, 2006 decision, the ALJ evaluated Mr. Melton's claim for SSI using the sequential evaluation process set forth in 20 C.F.R. § 416.920 (2006). Mr. Melton bears the burden of demonstrating his disability as to the first four steps. At step five the burden shifts to the Commissioner. If Mr. Melton's claim fails at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

At step one the ALJ found Mr. Melton has not engaged in substantial gainful activity since June 20, 2005, the alleged date of onset. R. at 19. The ALJ concluded at step two that Mr. Melton has the following severe impairments: "a back disorder and residuals of a foot injury." *Id.* (citations omitted). The ALJ further found at step two that although one of Mr. Melton's treating physicians listed a diagnosis of asthma and although Mr. Melton may have a severe impairment of asthma, "the medical evidence of record does not support a finding." R. at 20 n.3.

At step three the ALJ determined Mr. Melton did not have an impairment or combination of impairments which meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart A, Appendix 1. The ALJ specifically considered Listing 1.04, *Disorders of the spine*. "The claimant does not have the requisite neuroanatomical findings to qualify for this listing." R. at 20.

5

Next the ALJ determined Mr. Melton's residual functional capacity ("RFC"). The ALJ found Mr. Melton can perform the exertional demands of light and sedentary work; however, Mr. Melton's occupational base is restricted due to the following non-exertional limitations:

> The claimant cannot climb ladders, ropes or scaffolds, be exposed to hazardous heights or hazardous moving machinery, or be exposed to extreme temperature changes. The claimant requires a low stress routine (i.e., work requiring no more than moderate attention, concentration, persistence and pace for prolonged periods) due to limited education and the effects of pain. The claimant retains the ability to occasionally climb stairs and ramps, to balance, to stoop and to crouch, but does not retain the ability to perform work involving kneeling or crawling. The claimant must avoid concentrated exposure to excessive vibration, humidity or wetness. The claimant should not push or pull controls with the legs and must not lift or carry objects above shoulder height. The claimant has moderate pain and moderate limitations as to performing activities within a schedule and maintaining regular attendance for reliability purposes, and being punctual within customary tolerances, and as to completing a normal work day or work week without an unreasonable length and number of rest periods.

*Id.*

At step four the ALJ considered Mr. Melton's past relevant work at a warehouse. "Because he currently does not retain the residual functional capacity to lift and carry objects above shoulder height, he can no longer perform this work." R. at 22. Finally, at step five the ALJ considered Mr. Melton's age (44 years old as of the date of the decision, categorized as a younger individual [18-44]), education (marginal; sixth grade and able to communicate in English), past work experience (transferability of job skills is not material) and his RFC (light and sedentary work with limitations). The ALJ found the Social Security Administration met its burden of proving Mr. Melton is capable of performing other work[2] that exists in significant numbers in the national economy, relying on the testimony of the VE. R. at 24, 287-88.

---

[2] Pre-assembler, Assembler II (Small Products) and Counter Clerk at the light, unskilled level. Taper (Printed Circuit Boards), Loader (Semi-Conductors) and Addressor at the sedentary, unskilled level. R. at 24, 287-88.

Accordingly, the ALJ concluded Mr. Melton is not under a disability since January 31, 2005, the date the SSI application was filed, as defined in the Social Security Act. R. at 24.

After the supplemental hearing on October 6, 2010, the ALJ re-evaluated Mr. Melton's SSI claim using the sequential evaluation process set forth in 20 C.F.R. § 416.920 (2010). At step one the ALJ determined Mr. Melton has not engaged in substantial gainful activity since November 10, 2008, the amended alleged date of onset. R. at 297. At step two the ALJ found Mr. Melton has two severe impairments: chronic back pain and residuals of fracture of left foot. *Id.* At this step the ALJ also noted other impairments listed in Mr. Melton's medical records. Samuel Alleyne, M.D. diagnosed chronic obstructive pulmonary disease ("COPD") and asthma. "Outside of prescriptions listed in the medical records, there are no reports of treatment in the record such as pulmonary function studies. The undersigned concludes that COPD and asthma are non-severe impairments because they produce no more than a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to perform basic work activities however they were, as a precautionary measure given consideration in presenting different hypotheticals to the vocational expert." R. at 299-300. The ALJ also considered other impairments listed in Mr. Melton's medical records. "The claimant has also alleged residuals of the fractured left femur and the fractured left wrist from the accident in November 2008 as functionally limiting impairments. However, the only evidence in the record of those conditions is contained in the hospital emergency room report with the attached x-ray report." R. at 300 (citation omitted).

At step three the ALJ found Mr. Melton does not have an impairment or combination of impairments which meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart A, Appendix 1. Regarding Mr. Melton's chronic back pain, the ALJ

considered Listing 1.04, *Disorders of the spine*, and found the required level of severity is not met because

> [T]here is no evidence of herniated nucleus pulposus, spinal stenosis, or degenerative disc disease resulting in compromise of a nerve root or the spinal cord. There is no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication and an inability to ambulate effectively. "Inability to ambulate effectively" means an extreme limitation of the ability to walk; that is, having insufficient lower extremity functioning to permit independent ambulation without the use of devices such as a walker, two crutches, or two canes (Section 1.00B2b(1)).

R. at 302.

The ALJ then considered Mr. Melton's residuals of fracture of left foot in light of Listing 1.02A, *Major dysfunction of a joint(s)* and found "no evidence of gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joints, and findings of joint space narrowing, bony destruction, or ankylosis, with involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively." R. at 303.

Next the ALJ determined Mr. Melton's RFC.

> [T]he claimant has the residual functional capacity to perform light work, and alternatively, sedentary work as defined in 20 CFR 416.967(b). He cannot climb ladders, ropes or scaffolds. He cannot be exposed to hazardous heights or hazardous moving machinery, or be exposed to extreme temperature changes. He can occasionally climb stairs and ramps, balance, stoop, and crouch. He cannot kneel or crawl as part of the work criteria. He experiences moderate pain. He must avoid concentrated exposure to excessive vibration. He also must avoid excessive dust, fumes, chemicals, poor ventilation, and excessive humidity or wetness. He is precluded from work requiring the use of push/pull controls with his lower extremities. He must not lift or carry above shoulder height. He has moderate limitations as to performing activities within a schedule and maintaining regular attendance for reliability purposes, and being punctual within customary

>   tolerances, and as to completing a normal work day or work week
>   without an unreasonable number and length of rest periods.

*Id.*

At step four the ALJ determined Mr. Melton is unable to perform his past relevant work as a general driver and tow-truck driver (medium and semi-skilled), a warehouse worker (medium and unskilled), a press helper (heavy and semi-skilled), and a garage door installer (medium and semi-skilled). "Since all of the claimant's work was at medium or heavy level, he cannot perform his past relevant work since he is currently limited to light exertional activities." R. at 304. Finally, at step five the ALJ considered Mr. Melton's age (42 years old on the date of his application; 46 years old on the amended alleged onset date [defined as a younger individual age 18-49]), his education (marginal; did not complete the seventh grade and able to communicate in English), past work experience (transferability of job skills is not material) and his RFC (light work with limitations). The ALJ found the Social Security Administration met its burden of proving Mr. Melton is capable of performing other work[3] that exists in significant numbers in the national economy, relying on the testimony of the VE. R. at 305, 384-85. Accordingly, the ALJ concluded Mr. Melton is not disabled within the meaning of the Social Security Act since November 10, 2008, the amended alleged date of onset. R. at 306.

### 3. **Standard of Review**

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

---

[3] Mail clerk [non-postal], pre-assembler [printed circuit boards] and assembler II [small products] at the light, unskilled level and taper [printed circuit boards], loader [semiconductor dyes] and addresser at the sedentary, unskilled level. R. at 305, 384-85.

9

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

**4.     Discussion.**

   *1.     Alleged Failure to Develop the Record*

Plaintiff contends the ALJ had a duty to develop the record and failed in this duty. Plaintiff notes, based on his amended alleged onset date of November 10, 2008, there are two medical records covering this period: (a) Dr. Samuel W. Alleyne's medical report of September 1, 2008 and (b) a two page report from the Washington Hospital Center documenting Mr. Melton's injuries sustained in a car accident. The ALJ gave no significant weight to Dr. Alleyne's opinion. The ALJ noted the scant information listed on the Washington Hospital Center records and the lack of subsequent records for follow-up treatment. Plaintiff asserts, in essence, the ALJ lacked acceptable medical evidence for the time period beginning November 10, 2008. Under these circumstances, Plaintiff claims the ALJ should have ordered a consultative examination to evaluate Plaintiff's impairments. "[A] consultative examination was necessary to determine the severity of [Mr. Melton's] back, foot, leg, arm and pulmonary conditions. Without such additional evidence, it was impossible for the Administrative Law Judge to make an informed decision regarding whether [Mr. Melton's] was disabled." ECF No. 14-1 at 7.

In the cross-motion for summary judgment Defendant rejects Plaintiff's assertion that the ALJ had an obligation to order a consultative examination. Defendant asserts there was sufficient evidence in the administrative record for the ALJ to determine disability. Contrary to Plaintiff's contention, the *only* medical record from on or after Mr. Melton's amended alleged onset date of November 10, 2008 is the two page report from the Washington Hospital Center. At the hearing Mr. Melton and his counsel agreed to submit additional records for the ALJ's consideration. The ALJ kept the record open for a period of time in anticipation of receiving the promised medical records which were never submitted. Defendant notes the claimant has the primary responsibility for obtaining medical and other records to support his claim. "This Court should not allow a claimant to disregard his primary responsibility to submit evidence and a specific commitment to an ALJ that he will do so and then, after the ALJ waits for the evidence but does not receive it, seek remand on the grounds that the ALJ had a duty to develop the record." ECF No. 16-1 at 11.

With regard to Dr. Alleyne's diagnoses of COPD and asthma, Defendant notes Mr. Melton did not testify to any limitations associated with these conditions. Dr. Alleyne's diagnoses *predate* the amended alleged onset date. Nonetheless, as a "precautionary measure," the ALJ included these impairments in hypothetical questions posed to the VE. *Id.* at 13. Finally, Defendant cites to the regulation governing consultative examinations and notes, per the regulation, the ALJ has *discretion* in deciding when to order a consultative examination.

During the October 6, 2010 hearing the ALJ raised the issue of the lack of medical records subsequent to Mr. Melton's treatment at the Washington Hospital Center's emergency room on November 10, 2008.

11

Q: Okay, and I'm going to accept that date. And what I've mentioned to counsel is - - and I know you had a severe injury at that time - -

A: Yes, I have, your honor.

Q: - - and he tells me you had some residuals from that and that you're going to work with him to get the necessary documentation medically to bring it forward for me.

A: Yes, I am.

Q: Okay. And if you can do that within the next 10 days, all right?

A: Yeah.

Q: All right. So, now - - so let me go ahead and just do a couple of things. One is I need to have you go ahead - - and you can start by just explaining, what happened on that day [of November 10, 2008]? You were involved in an accident, right?

A: Yes, I was.

Q: Okay, and automobile accident?

A: Yes, it was. Automobile accident.

Q: And you suffered an injury.

A: Yes, I did.

Q: All right, and what was the injury?

A: I broke my femur in my left leg - -

Q: Okay.

A: - - and also I fractured my wrist and they put a metal plate in my wrist and also my left [phonetic], from my hip down to my knee, a metal plate.

Q: All right. And so it's good to get that evidence, right?

A: Yes.

>Q: That'll help, all right?
>
>A: Yes, it is.
>
>\* \* \*
>
>Q: You're right-handed, okay. All right. And since that time period - - and again, I'm a little at a loss because I don't have those medical records [phonetic], have you continued to have some problems with pain or - -
>
>A: Yes, I do, constant pain, yes.

R. at 366-68 (colloquy between ALJ and Mr. Melton).

>ALJ: So in terms of this, I'm going to let him ask you some questions. I don't think he has too many. The biggest thing would help you would be trying to get that additional medical evidence of record.
>
>ATTY: Yeah, I just want to be - - that's from your primary care provider, the clinic you're going to to get the oxycodone, [INAUDIBLE].
>
>CLMT: Yeah, that's my family doctor.
>
>ALJ: Right.
>
>ATTY: And you have to go once a month because the - -
>
>CLMT: I go once a month, [INAUDIBLE].
>
>ATTY: - - script is only good for 30 days.
>
>CLMT: Correct.
>
>ALJ: Right.
>
>ATTY: So you should have once a month notes or something for - -
>
>CLMT: Yeah, I'm sure he does.
>
>ATTY: Okay.
>
>CLMT: That's not a problem.

>    ALJ:   Yeah, and that would be good, okay.
>
>    ATTY: That would be what we would provide.

R. at 378.

>    ALJ:   And if you could get me that information, that would be most helpful.
>
>    ATTY: I'll get it.

R. at 386.

Despite the promise by Mr. Melton's counsel, the additional medical records from Mr. Melton's primary care provider were never submitted. "Subsequent to the [October 6, 2010] hearing, the record was held open for submission of additional evidence. However, additional evidence was not received and the record was closed." R. at 295.

The primary responsibility for producing evidence in support of a claim for disability falls on a claimant such as Mr. Melton.

> In general, you have to prove to us that you are . . . disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s). If material to the determination of whether you are . . . disabled, medical and other evidence must be furnished about the effects of your impairment(s) on your ability to work. . . .

20 C.F.R. § 416.912(a) (2010).

This section provides further guidance regarding when a consultative examination should be ordered.

> If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense. . . Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources.

14

*Id.* § 416.912(f).

The ALJ does have an obligation to develop a complete medical record of a claimant. "[B]efore we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources." *Id.* § 416.945(a)(3).

Plaintiff acknowledges that an ALJ's duty to develop the record is heightened when a claimant is unrepresented. *See Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980). Plaintiff argues an ALJ's duty to develop the record also exists, though to some lesser degree, when a claimant is represented by counsel.

Regarding the absence of medical records after Mr. Melton received treatment at the Washington Hospital Center's emergency room, Mr. Melton appeared before the ALJ almost two years after the accident. He sustained injuries on his left side (fractured femur and wrist). Mr. Melton testified about experiencing constant pain. He has been prescribed oxycodone which he takes two to three times per day as needed. The oxycodone eases the pain somewhat. Mr. Melton does not experience any side effects from taking this narcotic. R. at 368-69. Mr. Melton did not testify about any other limitations resulting from the November 10, 2008 automobile accident.

The ALJ did not ignore the lack of post-November 10, 2008 medical records and squarely addressed this matter in the decision.

> Although the claimant may have residuals of the fracture of his left femur and his left wrist, there is no medical documentation for those conditions and the undersigned must conclude that after two years the fractures from the motor vehicle accident in November 2008 have healed. As indicated previously, the record was held open for two months for additional documentation, which was not

15

> forthcoming. The medical evidence does not support a finding of markedly limited functioning during the period prior to the amended alleged onset date of November 10, 2008, and there is no evidence in the record indicating that the injuries sustained on that date have been disabling for any continuous 12-month period up to the present.

R. at 302.

Absent from the discussion about the ALJ's purported failure to develop the record is the representation made by Mr. Melton's counsel. The ALJ requested additional records from Mr. Melton and his counsel to ensure a complete medical history. Plaintiff's counsel affirmatively stated he (and his client) will get those records. *See* R. at 378, 386.

> (b) *Affirmative duties.* A representative shall, in conformity with the regulations setting forth our existing duties and responsibilities and those of claimants:
>
> (1) Act with reasonable promptness to obtain the information and evidence that the claimant wants to submit in support of his or her claim, and forward the same to us for consideration as soon as practicable. . . and to assist the claimant in furnishing medical evidence that the claimant intends to personally provide and other evidence that we can use to reach conclusions about the claimant's medical impairment(s). . . .
>
> (2) Assist the claimant in complying, as soon as practicable, with our requests for information or evidence at any stage of the administrative decisionmaking process in his or her claim.

20 C.F.R. § 416.1540(b)(1)-(2) (citation omitted).

The ALJ requested additional records to ensure a complete medical history of Mr. Melton. Counsel and Mr. Melton stated those records would be provided. Two months elapsed without the promised production of medical records despite Mr. Melton seeing his primary care provider monthly. Neither Mr. Melton nor his counsel requested an extension of time to obtain the medical records or requested the ALJ's assistance in obtaining the medical records.

16

According to the regulations, the duty to develop a complete medical record is triggered when the evidence submitted is *inadequate* or *insufficient* for an ALJ to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 416.912(e), 416.917. Although Mr. Melton's post-November 10, 2008 medical records were not produced, the ALJ's disability determination in the absence of those records was neither unfair nor clearly prejudicial. *See Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003). Mr. Melton testified at a hearing approximately two years after the accident and the ALJ observed him during this hearing. The ALJ's decision reflects he reviewed all evidence of record, before, as of and after the amended alleged onset date. The ALJ had sufficient information to make a disability determination.

With regard to the ALJ's purported failure to develop the record as to Mr. Melton's COPD and asthma, the Court has previously quoted from the ALJ's decision why these impairments were deemed non-severe. *See supra.* Despite this determination, the ALJ incorporated Mr. Melton's COPD and asthma in the hypothetical question posed to the VE: "[N]o excessive dust, fumes, chemicals, poor ventilation, or excessive humidity or wetness." R. at 383. Any alleged failure to develop the record by not ordering a consultative examination for Mr. Melton's COPD and asthma was addressed by the ALJ including these impairments as part of Mr. Melton's RFC. Plaintiff has not demonstrated any unfairness or prejudice.

    *2.       Alleged Error in Assessment of Plaintiff's RFC*

Plaintiff concedes, in accordance with Social Security Ruling 96-8p, the ALJ performed a function-by-function assessment of Mr. Melton's ability to perform both the exertional and non-exertional requirements of work. Plaintiff asserts however that this assessment lacks a medical basis. ECF No. 14-1 at 9. "[T]he only evidence of record documenting [Mr. Melton's] restrictions during the relevant time period at issue were the report of Dr. Alleyne, which the

Administrative Law Judge expressly rejected, and the report from the Washington Hospital Center documenting the Plaintiff's multiple fractures." *Id.* at 9-10 (citations omitted).

The Court finds the ALJ considered all the evidence of record, before, as of and after Mr. Melton's amended alleged onset date of November 10, 2008 in determining Mr. Melton's RFC. That evidence included Mr. Melton's testimony. Mr. Melton testified at the October 6, 2010 hearing. His chronic back pain persisted, consistent with his testimony at the August 8, 2006 hearing. The lack of post-November 10, 2008 medical records did not render the ALJ's RFC determination erroneous for the reasons discussed *supra*. Moreover, although the ALJ did not assign significant weight to Dr. Alleyne's opinion, the ALJ nonetheless incorporated Dr. Alleyne's diagnoses of COPD and asthma as part of Mr. Melton's RFC. That assessment is supported by substantial evidence.

**5.    Conclusion**.

Substantial evidence supports the decision that Mr. Melton is not disabled. Accordingly, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand will be denied.

Date: <u>April 30, 2013</u>                                    _____/s/_____
                                                                                WILLIAM CONNELLY
                                                                         UNITED STATES MAGISTRATE JUDGE